SMITH, Superintendent of Banks, Appellant, v. WYSUPH, Respondent.

(208 N. W. 783.)

(File No. 5865.   Opinion filed May 5, 1926.)

1. **Bills and Notes—Holder in Due Course—As Respects Issue of Bona Fides, Agreement by Seller of Corporate Stock to Resell It, Pay Buyer's Notes from Proceeds, and Divide Profits on Resale with Buyer, Held Not to Constitute Infirmity in Notes or Defect in Title.**

   As respects issue of bona fides, agreement by seller of corporate stock, subscribed for by maker of notes given in payment, to resell it, pay notes from proceeds, and divide profits on resale with subscriber, held not to constitute infirmity in notes or defect in title thereto, since such agreements deal wholly with acts to be performed in future.

2.  Bills and Notes—As Respects Issue of Bona Fide Purchaser, Agreement by Seller of Corporate Stock to Cancel and Return Buyer's Notes at Maturity and to Indemnify Him from Payment if They Were Negotiated Held Not to Constitute Infirmity in Notes or Defect in Title thereto.

Agreement by seller of corporate stock to cancel and return buyer's notes at maturity and to indemnify him from payment if they were negotiated held contract to pay note at maturity and surrender it to maker, which is entirely executory, and does not constitute infirmity in notes or defect in title thereto.

3.  Bills and Notes—As Respects Issue of Bona Fide Purchaser, Agreement by Seller of Corporate Stock to Cancel and Return Buyer's Notes at Maturity and to Indemnify Him if They Were Negotiated Must Be Construed as a Consistent Whole.

Agreement by seller of corporate stock to cancel and return buyer's notes at maturity and to indemnify him from payment if they were negotiated must be construed as a consistent whole.

4.  Bills and Notes—Answer in Action on Note, Alleging that Plaintiff Had Knowledge of Executory Agreements Made When Note Was Executed Which Tend to Relieve Maker from Liability, but Not Alleging Bad Faith, Held Demurrable (Rev. Code 1919, Sec. 1760).

Answer in action on note, alleging that plaintiff had knowledge of executory agreements made when note was executed, tending to relieve maker from liability, but not alleging bad faith of plaintiff in taking note or failure to pay fair consideration for it, held demurrable under Rev. Code 1919, Sec. 1760, relative to notice of infirmity in the instrument.

---

Note.—See, Headnotes (1) and (2), American Key-Numbered Digest, Bills and notes, Key-No. 343, 8 C. J. Sec. 730 (Anno.); (3) Bills and notes, Key-No. 343, 8 C. J. Sec. 327; (4) Bills and notes, Key-No. 481, 8 C. J. Secs. 1197, 1202.

On what constitutes notice of defect, see U. L. R., Vol. 5, Sec. 56, p. 235.

Appeal from Circuit Court, Bon Homme County; Hon. R. B. Tripp, Judge.

Action by Fred R. Smith, State Superintendent of Banks, in charge of the Farmers' Savings Bank of Tabor for the purpose of liquidation, against Frank Wysuph. From an order overruling plaintiff's demurrer to the answer, he appeals. Reversed and remanded.

*Orvis & French,* of Yankton, for Appellant.

*H. A. Doyle,* of Yankton, and *G. M. Caster,* of Lake Andes, for Respondent.

MORIARTY, C.   This appeal is from an order overruling a demurrer to the answer.   The action was brought to recover upon a promissory note negotiable in form, made by the respondent, payable to his own order, and indorsed by him.   The complaint alleges that this note, on the date of its execution, was indorsed by the respondent and sold to the Farmers' Savings Bank, of Tabor, S. D., that the note is due and unpaid and is part of the assets of said bank, and that the appellant is legally in charge of said bank for the purpose of liquidating its assets.

The answer admits the execution and indorsement of the note, that the Farmers' Savings Bank of Tabor is the holder of the note, and that no part thereof has been paid.   And the answer sets up, as an affirmative defense, that the note sued upon was signed and indorsed by the respondent, and by him delivered to the Midland Packing Company, of Sioux City, Iowa, in the purchase of preferred stock of said corporation.   And it is further alleged that, at the time said note was so executed and delivered, the Midland Packing Company, and certain of its agents and representatives, entered into a certain written contract with respondent for the purpose of inducing respondent to sign and indorse the note sued upon, and the said written contract is set out in full in the answer.   And it is further alleged that one Robert Vauk, who was then the cashier and managing officer of the Tabor bank, was present during the transactions in which said note was given, and was then actively engaged in assisting the agents of the Midland Packing Company in disposing of its stock, and that respondent, knowing said Vauk, and having confidence in his integrity and business ability, handed the aforesaid written contract to him and requested him to advise respondent whether, in his judgment, under that contract, respondent would ever become legally bound to pay the notes which were described therein. And it is alleged that said Vauk read the said contract and advised respondent that said contract was a complete protection against respondent's ever becoming legally bound to pay said notes, or any of them.   And the answer says that, through this knowledge and

participation of its said cashier, the Farmers' Savings Bank of Tabor had full knowledge of all these facts, at the time it took the note from the Midland Packing Company.

The written contract so pleaded contains provisions for the sale to respondent of $50,000 worth of the Midland Company's stock, and the making by respondent of five non-negotiable promissory notes of $7,500 each. and $12,500 in negotiable promissory notes.  Respondent's subscription for the stock is referred to in the written contract, but the subscription contract itself is not set out in the answer.  The answer admits that the note sued upon is one of the negotiable notes provided for in the contract.

After naming respondent as the party of the first part and E. M. Hilton, Tom G. Taylor & Co., and the Midland Packing Company parties of the second part, the contract contains the following provisions :

"Said subscription has been made, however, in consideration of the distinct understanding and agreement made by the said E. M. Hilton that he would resell the said stock for the account of the first party, at the sum of not less than $125 per share, as soon as possible, and on or before the maturity of said notes, and upon such resale will pay to the said first party, in cash, one-half of the purchase price of the said stock over and above the par value of $100 per share, retaining the other one-half as his fee and commission for making such sale.  And, in consideration of the premises, the said Tom G. Taylor & Co. and the Midland Packing Company hereby undertake and agree that each and every one of the covenants and agreements on the part of second parties, or either of them, to be kept and performed will be fully and completely carried out, and that the said party of the first part shall not be required to take or pay for any of the shares of stock so subscribed as aforesaid, and that sufficient of stock will be resold and the purchase price collected to take up before maturity the two negotiable notes above described, and, in the event that the same is not so resold within said time, the said Tom G. Taylor & Co. and the Midland Packing Company hereby agree to pay the said negotiable notes when due, and to return them to the said party of the first part, without cost, expense or outlay on his part, whatsoever.  * * *  It being expressly understood hereby that the said subscription of first party is conditioned upon the faithful per-

formance of the agreements to resell his said stock as aforesaid, and that the said stock so subscribed shall be paid for wholly from the proceeds of such resale, and that the said first party shall not be called upon or required by second parties, or either of them, to pay any portion of the par value of the said stock so subscribed for; the second parties further undertake and agree to cancel and return promptly at maturity, the said promissory notes, and each and every one of them, and to at all times indemnify and save harmless the said first party of and from the payment of the said promissory notes, or any part thereof, should the same be negotiated."

Appellant demurred to the answer, on the ground that it does not state facts sufficient to constitute a defense. This demurrer was overruled, and, from the order overruling it, this appeal is taken.

Respondent contends that the bank, having notice of the written contract, was charged with notice that an agreement existed between respondent and the Midland Packing Company, the real payee of the note, to the effect that there was no real promise to pay the note, or any part thereof, but that the same was to be surrendered at maturity without payment, if not negotiated, or, if negotiated, the second parties to the contract were to be solely liable thereon. The provisions relied upon by the respondent may be analyzed so as to be classed under two distinct heads:

[1] First. Undertakings on the part of the second parties and purely executory in their nature. The agreement to resell the stock subscribed for by respondent, to pay the notes out of the sale proceeds and to divide with respondent the profits on the resale are of this class. As these agreements deal wholly with acts to be performed in the future, they would not, in themselves, constitute any infirmity in the note or any defect in the title thereto. Farmers' & Merchants' Bank of Wellsburg, Iowa, v. Nissen, 190 N. W. 1014, 46 S. D. 121.

[2, 3] But, as to the provision: "The second parties further undertake and agree to cancel and return promptly at maturity, the said promissory notes, and each and every one of them and to at all times indemnify and save harmless the said first party of and from the payment of the said promissory notes, or any part thereof, should the same be negotiated"—respondent's counsel

earnestly contend that these provisions charge any one having knowledge thereof with notice that it was agreed that there should be no liability whatever resting upon the respondent and arising from the notes.

Considered apart from the agreement that the notes might be negotiated, the words of the contract might bear this construction. But such construction is entirely inconsistent with negotiability of certain of the notes, including the one involved in this action. The contract must be construed as a consistent whole. It provides for the negotiation of this note. To be consistent with this right to negotiate, the provision in question must be construed to mean that, in case the note is negotiated, the second parties agree to pay it at maturity and surrender it to the respondent. So construed, this agreement is entirely executory, as well as the one first discussed, and falls within the rule enunciated in the Nissen Case. Notice of the existence of the contract would not constitute notice of infirmity in the note.

[4] Section 1760, R. C., provides:

"To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The answer contains no allegation that there was any fraudulent intent on the part of any party to the transaction, that there was any conspiracy to defraud defendant, that the bank did not pay a fair and adequate consideration for the note, or any other fact tending to show bad faith in the taking of the instrument. So far as the answer shows, Vauk may have relied as implicitly as the respondent himself upon the promise of the Midland Packing Company and its representatives to pay the note at its maturity.

The court erred in overruling the demurrer, and the order appealed from is reversed.

Reversed and remanded.

MISER, Circuit Judge, sitting in lieu of SHERWOOD, J.